05 Civ. 4206 (THK)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SYLVIA ORTIZ-MOSS,

                                                              Plaintiff,

                              -against-

NEW    YORK    CITY    DEPARTMENT    OF
TRANSPORTATION, VICTOR ROSEN and VINCENT
SUSI (individually and in their official capacities),

                                                           Defendants.

# DEFENDANTS' AMENDED MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

**MICHAEL A. CARDOZO**
*Corporation Counsel of the City of New York*
Attorney for Defendants
100 Church Street, Room 2-187
New York, NY 10007-2601
Tel: 212-788-0952

**ALAN M. SCHLESINGER,**
Of Counsel

City No.: 05LE000209

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................... 1

STATEMENT OF FACTS ......................................................................................... 3

ARGUMENT ............................................................................................................. 4

POINT I ................................................................................................................. 4

SOME OF THE CLAIMS ARE TIME-BARRED. .................................. 4

POINT II ................................................................................................................ 5

THE DISPARATE TREATMENT CLAIMS
MUST BE DISMISSED. ............................................................................ 5

A.   Plaintiff Cannot State A *Prima Facie* Case ....................................... 5

B.   Legitimate Nondiscriminatory Reasons and An
Absence Of Pretext ..................................................................................... 9

C.   Plaintiff Cannot Establish A Hostile Work
Environment ............................................................................................... 11

D.   Plaintiff's Retaliation Claim Must Also Be
Dismissed ................................................................................................... 14

POINT III .............................................................................................................. 17

PLAINTIFF'S SECTION 1983 CLAIMS MUST
BE DISMISSED. ........................................................................................ 17

A.   The First Amendment Standard ....................................................... 17

B.   Public Concern And Protected Speech ............................................ 18

C.   Monell ........................................................................................................ 21

D.   Individual Claims Must Be Dismissed -
Personal Involvement ............................................................................... 22

E.   Individual Claims Must Be Dismissed -
Qualified Immunity ................................................................................... 24

CONCLUSION ....................................................................................................... 25

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x

SYLVIA ORTIZ-MOSS,

                                        Plaintiff,            05 Civ. 4206 (THK)

                -against-

NEW   YORK   CITY   DEPARTMENT   OF
TRANSPORTATION,   VICTOR   ROSEN   and
VINCENT SUSI (individually and in their official
capacities),

                                        Defendants.

-------------------------------------------------------------------- x

**DEFENDANTS'            AMENDED
MEMORANDUM  OF  LAW  IN  SUPPORT
OF   ITS   MOTION   FOR   SUMMARY
JUDGMENT**

## PRELIMINARY STATEMENT

        Plaintiff, brings this action alleging gender discrimination and retaliation in violation of Title VII And § 1983.  Her principle claim seems to be that on April 1, 2002, she was removed from the position of Chief, Parking Control Unit ("PCU"), Bureau of Parking in the Department of Transportation of the City of New York ("DOT").  The Chief, PCU position is an in-house position, as opposed to a civil service title, and the PCU was a 75-80 person operation in DOT until it was transferred to the Police Department of the City of New York ("NYPD") in September, 2006.  She further alleges that she was not reassigned to the Chief, PCU position in the 2002-2006 period.  When a new Chief, PCU, was named 8 or 9 months later, her office was moved to an office that she disliked for 2 to 3 weeks.   As soon as she complained her office was changed.

        In addition, plaintiff alleges that on one occasion, she saw a pornographic

picture and on another she saw a political cartoon that had an obscene display.  These were the only pictures she saw unsolicited.  While she did not report the pictures to the DOT's EEO, someone else did and an investigation was begun which lasted a few months.  As a result of this investigation, the Chief, PCU, who replaced plaintiff was disciplined together with 11 other members of PCU.  The Chief was demoted for a year, lost $6-7,000 in salary, and was placed on probation for a year.

Defendants now move for summary judgment.  First, many of the claims, including the claim of demotion from Chief, PCU, are time-barred.  The EEOC charge was not filed until August 29, 2004, and the 300-day statute of limitations reaches only to November, 2003.  In addition, this action was filed on April 27, 2005, and the three year statute of limitations applicable to § 1983 claims bars claims that accrued prior to April 28, 2002.  Thus, the demotion claim must be dismissed in its entirety.

Second, plaintiff has not shown a *prima facie* case of discrimination.  The Chief, PCU, position is an in-house title and not a civil service title.  Plaintiff and the staff of the PCU are all unionized employees and all received the same raises as other members of their union.  Moreover, plaintiff cannot show any circumstances linking her removal from the Chief, PCU position to any protected characteristic or activity.  In January, 2002, a few months before her reassignment, she was promoted from her previous civil service title of Staff Analyst to a new civil service title, Associate Staff Analyst, by Mr. Rosen who is a defendant here.

Third, the DOT had a legitimate nondiscriminatory reason to reassign her from Chief, PCU to Chief, Administration and then Chief of Training in PCU.  Plaintiff made enemies of many of the PCU staff.  She was the subject of complaint from the union

representing those workers.  When, a few months later, a new Director, Vincent Susi, took over general supervision of PCU he discussed the PCU with officers, supervisors, and the union, in separate meetings.  From their highly negative review of plaintiff, Mr. Susi decided to reassign plaintiff in April, 2002.  Two years later, in 2004, when her reassignment to the Chief, PCU, position was rumored, the staff circulated a petition opposing plaintiff's return to the Chief, PCU position.  Furthermore, as Chief of Training she trained new employees. These new employees complained about the training and in particular made some of the same complaints that the staff had made earlier.  This inability to get along with PCU staff amply explains the alleged failure to return her to the Chief, PCU position or to a higher position in the DOT's Bureau of Parking.

Plaintiff cannot show pretext, that is that the proffered reasons are false and that the real reason is discrimination or retaliation.  Plaintiff was made Chief, PCU in 1998 by Mr. Rosen and that she received a civil service promotion from Mr. Rosen in January, 2002, a few months before she was reassigned from the Chief, PCU in-house position. Plaintiff now accuses the same of sex discrimination and retaliation.

### STATEMENT OF FACTS[1]

The Court is respectfully referred to defendants' Statement of Undisputed Facts Under Local Civil Rule 56.1, dated September 28, 2007 ("56.1 Statement"), the Declaration of Alan M. Schlesinger, dated September 28, 2007 ("Schlesinger Decl.") and the supporting evidence cited to therein for a statement of pertinent and material facts.

---

[1] Unless otherwise indicated, all references to Exhibits are to the exhibits to the declaration of Alan M. Schlesinger, dated August 17, 2007.

## ARGUMENT

### POINT I

### SOME OF THE CLAIMS ARE TIME-BARRED.

In New York, a Title VII claim is time-barred if the plaintiff does not file a charge with the EEOC within 300 days after the alleged adverse action.  See 42 U.S.C. § 2000e-5(e)(1) (2000); Tewksbury v. Ottaway Newspapers, Inc., 192 F.3d 322, 328-29 (2d Cir. 1999); see also National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002).  The EEOC charge here was filed August 29, 2004, and, thus, all Title VII claims accruing before November 3, 2003, are time-barred.  This includes, for example, all plaintiff's claims concerning her reassignment from the Chief, PCU, position on or about April 1, 2002.  This claim accrued more than 300-days before the August, 2004, filing of the EEOC charge and is therefore time-barred under Title VII.  Moreover, it occurred more than three years prior to the filing of the complaint in the instant action and, thus, to the extent that plaintiff is attempting to assert § 1983 claims, these are also time-barred.  There are no timely claims concerning plaintiff's reassignment from Chief, PCU to Chief of Administration and these claims must be dismissed.

Also time-barred are plaintiff's Title VII claims concerning the assignment of office space in late 2002.  This claim is also outside of the 300-day limitations period.  While it might be timely under § 1983, to does not appear that plaintiff is alleging that this event states a § 1983 claim.  If plaintiff's are attempting to create a § 1983 out of the office space event then it fails on the merits as will be seen below. [2]

---

[2] Individual defendants cannot, of course, be sued under Title VII.  Tomka v. Seiler, 66 F.3d 1295, 1313 (2d Cir. 1995).  Thus, to the extent that the complaint is attempting to interpose such claims here they must be dismissed.

## POINT II

## THE DISPARATE TREATMENT CLAIMS MUST BE DISMISSED.

As a general matter, in discrimination cases, plaintiff has the initial burden to establish a *prima facie* case by citing evidence demonstrating that she: (1) is a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) the adverse employment action took place under circumstances that give rise to an inference of discrimination.  See McDonnell-Douglas v. Green, 411 U.S. 792 (1973); James v. New York Racing Ass'n, 233 F.3d 149, 153-4 (2d Cir. 2000); Stern v. Trustees of Columbia Univ., 131 F.3d 305, 311-12 (2d Cir. 1997).  Assuming that plaintiff meets this burden, then the burden of production (although not the burden of persuasion) shifts to the employer, to show that any adverse employment actions were taken for legitimate, non-discriminatory reasons.  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993).  Once defendant produces such evidence, the burden or production shifts again to plaintiff to demonstrate that defendants' proffered reasons are a pretext for discrimination, that is: (1) that the employer's reasons are not the real reasons for the employment action; and (2) that the real reason for that conduct was unlawful discrimination.  See James v. New York Racing Ass'n, 233 F.3d 149, 156 (2d Cir. 2000).[3]

**A.    Plaintiff Cannot State A *Prima Facie* Case**

In cases where the plaintiff claims that unlawful discrimination is demonstrated by the employer's choice of a candidate with lesser qualifications, the plaintiff carries an especially "weighty burden."   Thomesen v. West, 99-CV-3035 (NGG) (TEB),

---

[3] The same analytical framework applied to Title VII also applies to plaintiff's claims under New York State and City Human Rights laws.  See Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714-15 (2d Cir. 1996).

2001 U.S. Dist. LEXIS 21566, *11-*12 (E.D.N.Y. Dec. 20, 2001)(citing Byrnie v. Town of Cromwell Bd. of Educ., 243 F.3d 93, 103 (2d Cir. 2001)).  "The plaintiff's credentials would have to be so superior to the credentials of the person selected for the job that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question."  Byrnie, 243 F.3d at 103 (internal quotation omitted). This is so because an employer is entitled to base its hiring decision on subjective criteria and need not prove that the person hired had "superior objective qualifications, or that it made the wisest choice, but only that the reasons for the decision were nondiscriminatory."  Davis v. State Univ. of New York, 802 F.2d 638, 641 (2d Cir. 1986) (citing Texas Dep't of Comty. Affairs, 450 U.S. at 258-59); see also Byrnie, 243 F.3d at 103 ("the court must respect the employer's unfettered discretion to choose among qualified candidates").

In the instant case, plaintiff cannot establish a *prima facie* case of gender discrimination because she cannot prove qualification, adverse employment action or that any adverse action occurred under circumstances raising an inference of discrimination.  See Forbes v. State Univ. of New York, 259 F. Supp. 2d 227, 235 (E.D.N.Y. 2003).  Plaintiff was the subject of much hostility from the staff of PCU.  The staff claimed that she targeted individuals for discipline and that she consistently talked to them in a rude and hostile manner.  This caused the union representing staff to complain about plaintiff in a letter in November, 2001.  These criticisms of plaintiff's leadership were echoed by the union, by the officers, and by the supervisors, to the new Director, Vincent Susi, who added the PCU to his portfolio of oversight responsibilities in March, 2002.  In early April, 2002, plaintiff was removed from the position of Chief, PCU, and reassigned to the position of Chief, Administration, PCU.  In 2004, when the prospect of plaintiff returning as Chief, PCU, was

rumored, the union once again complained to DOT management in a letter, attaching petitions signed by the PCU staff opposing plaintiff's return.  Moreover the same sort of complaint were heard about plaintiff from PCU trainees.  Plaintiff, as Chief of Training, trained the incoming class of officers.  The trainees complained that the instructors needed more training, gave inconsistent instructions, were unstructured, and that the instructors were rude.  One trainee stated that: "The instructor and her captain (Nurse) needs supervisor training.  They don't know how to talk to people …" Another commented that "They try to overpower you because their rank." Yet another complained that the instructor "Turned every question into an argument. …Very rude always spoke down to members of the class… " See Memorandum and attachments which are annexed to the Schlesinger Decl. Exhibit "G."

        The in-house title of Chief, PCU, which is not a civil service title or position, was reassigned because of plaintiff's poor performance in that position, including complaints from employees of every rank as well as the union.  Plaintiff spoke to employees of all ranks in a derogatory manner, was rude, and abusive.  While plaintiff complains of a loss of overtime, she attributes the alleged loss to the loss of the Chief, PCU, position in April, 2002, and the less time demanding duties of her new position, and not to any new discrimination or retaliation.  Her new job simply did not require plaintiff to work overtime.  Plaintiff does not say that there were opportunities for overtime that were deliberately denied to her.  Furthermore, the perceived slights suffered by plaintiff cannot suffice to show adverse action. Wanamaker v. Columbian Rope Co., 108 F.3d 462, 466 (2d Cir. 1997)( loss of office space not adverse action).  Any complaints about work assignments and schedules, either at DOT or at NYPD, also do not constitute adverse action.  See Figueroa v. New York City Health and Hospitals Corp., 2007 U.S. Dist. LEXIS 58342 *12 (E.D.N.Y. 2007)("However, simply

being assigned undesirable work duties and unfavorable work schedules are insufficient to establish adverse employment action, since they do not have a material impact on the terms and conditions of plaintiff's employment.")(citation omitted).[4]  Thus, the claim concerning the April, 2002, reorganization not time-barred must be dismissed for failure to state a *prima facie* case.  Nor do plaintiff's other allegations state a *prima facie* case under Title VII.

Plaintiff also cannot demonstrate that she was more qualified than the employees to whom the Chief, PCU, position and the next higher position, Deputy Director Bureau of Parking, were reassigned in the 2002-2006 period.  Plaintiff was consistently described as alienating trainees, officers, supervisors, and the union representing almost all of these employees.  There is no similar record concerning the other employees who served as Chief, PCU or Deputy Director.  Certainly, plaintiff has not, for example, produced a letter from L. 237 concerning any of these supervisors which mimics the letters from the union in November, 2001, and February, 2004.  The lack of causation is fatal to this Title VII case.

> Everyone can be characterized by sex, race, ethnicity, or (real or perceived) disability; and many bosses are harsh, unjust, and rude. . . . It is therefore important in [alleged discrimination] . . .  cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination. Otherwise, the federal courts will become a court of personnel appeals.

Alfano v. Costello, 294 F.3d 365, 377 (2d Cir. 2002).

---

[4] Plaintiff also claims that the transfer to the NYPD is an adverse action but this claim is not in the complaint and there has been no supplement to that complaint.  In any event all of PCU was transferred and the transfer from one City agency to another does not constitute an adverse action where plaintiff does not allege a change in salary or benefits or civil service title).  Williams v. R.H. Donnelley, 368 F.3d 123, 128 (2nd Cir.2004); Milford v. New York City Board of Health, 2005 U.S.  Dist. Lexis 1131 *13 (E.D.N.Y. 2005)("'In involuntary transfer cases, the inquiry focuses on whether the transfer constitutes a 'negative employment action tantamount to a demotion.'…")(citations omitted).

**B.      Legitimate Nondiscriminatory Reasons and An Absence Of Pretext**

Even had plaintiff state a *prima facie* case, DOT had a legitimate nondiscriminatory reason for its actions and plaintiff cannot show pretext.  First, the alienation of employees of all ranks in the PCU, as well as the union and the trainees, are supported by contemporaneous documents.  While plaintiff may disagree with the DOT for listening to the complaints of employees plaintiff supervised, the fact that DOT did respond to those complaints does not constitute discrimination.  Plaintiff's allegations are that she had a continuing personality conflict with members of the PCU and that the DOT should not have given such conflict any weight at all.  The Second Circuit has held that a discrimination suit may not be used as a venue for second-guessing the criterion adopted by the employer to measure job performance.  Thornley v. Penton Publishing, 104 F.3d 26, 29 (2d Cir. 1997); see Ricks v. Conde Nast Publs., 6 Fed. Appx. 74 (2d Cir. 2001).  That plaintiff disagrees with the criterion under which she fared so poorly, does not constitute discrimination.  It need only be noted that plaintiff cannot show that any other Chief, PCU, was the object of such complaints and was treated better than plaintiff.  Indeed, Mr. Bones was the subject of a complaint concerning pornography and a failure to respond to the circulation of such material and he was replaced as Chief, PCU.  He was also disciplined where plaintiff was not.  In short, the treatment of plaintiff cannot be shown to be the product of discriminatory or retaliatory animus.

Second, to the extent that plaintiff is attributing personal animosity to her supervisors, Mssrs. Susi and Rosen, the Supreme Court has warned that "…mere personality conflicts must not be mistaken for unlawful discrimination, lest the antidiscrimination laws 'become a general civility code.'"  Faragher v City of Boca Raton, 524 U.S. 775, 788 (1998)(citation and internal quotation marks omitted); see Gorley v Metro-North Commuter

R.R., 2000 U.S. Dist. LEXIS 18427, *25-26, (S.D.N.Y. 2000), aff'd, 29 Fed Appx 764 (2d Cir 2002); Gibson v Brown, 1999 U.S. Dist. LEXIS 18555, *34, (E.D.N.Y. 1999), aff'd, 242 F.3d 365 (2d Cir 2000).

Third, plaintiff was assigned by Mr. Rosen to the Chief, PCU position in 1998.  It was Mr. Rosen who gave her a promotion in civil service title from Staff Analyst to Associate Staff Analyst in January, 2002, a few months before she was reassigned from the in-house position of Chief, PCU.  As with almost all appointments to civil service titles, the promotion to Associate Staff Analyst was subject to a one-year probationary period.  See 55 R.C.N.Y. App. A § 5.2.1(a) ("Every appointment and promotion to a position in the competitive or labor class shall be for a probationary period of one year …").  Thus, Mr. Susi was responsible for maintaining plaintiff in the Associate Staff Analyst title for the period March, 2002, through January, 2003, when she could have been returned to the Staff Analyst title without any further process.  When a supervisor is mainly responsible for favorable conduct towards an employee and then negative conduct occurs toward that employee, invidious discriminatory or retaliatory animus cannot be inferred.  See Jetter v. Knothe Corp., 324 F.3d 73, 76 (2d Cir. 2003)(single actor theory in context of age discrimination).

> The pattern of favorable treatment here, continuing almost to the date of his termination, strongly suggests that [plaintiff] was not the victim of invidious discrimination.

Chin v. ABN-AMRO N. Am., Inc., 463 F. Supp. 2d 294, 303-04 (E.D.N.Y. 2006).

Finally, plaintiff cannot show that there is any reason whatsoever to believe that these reasons were false or a pretext for discrimination.  This is an end to her disparate treatment and retaliation claims.

**C.      Plaintiff Cannot Establish A Hostile Work Environment**

          To establish the existence of a hostile work environment, a plaintiff must show that her workplace was permeated with "discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  Harris v. Forklift Systems, 510 U.S. 17, 21 (1993)(internal quotations and citations omitted).  The conduct at issue must be "so severe or pervasive as to create an objectively hostile or abusive environment, and where the victim subjectively perceives the environment to be abusive."  Richardson v. New York State Dep't of Correctional Services, 180 F.3d 426, 436 (2d Cir. 1999).

          Where, as is largely true in this case, a plaintiff alleges harassment by co-workers, she must show not only proof that there was a hostile work environment, but a specific basis for imputing the conduct to the employer.  See Distasio v. Perkin Elmer Corp., 157 F.3d 55 (2d Cir. 1997); Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 715 (2d Cir. 1996).  An employer will only be held liable for its own culpable conduct and not harassment by co-workers.  See Faragher, 524 U.S. at 789.  Even if plaintiff proves a hostile work environment, the employer will only be liable if plaintiff also proves that the employer either failed to provided a reasonable method of complaining about the alleged conduct, or if the employer knew of the harassment, but did nothing about it.  See Distasio, 157 F.3d at 63.

          Here, plaintiff complains that she found a pornographic picture in the printer she shares with others and that there were, at about the same time, one other cartoon with a possibly obscene attribute.  Plaintiff's Dep. at 105-06, which is annexed to the Schlesinger Decl. as Exhibit "A."  This cannot constitute a hostile work environment as a matter of law.  First, there is no evidence that the picture was directed at plaintiff.  See Renz v. Grey Advertising Co., 135 F.3d 217 (2d Cir. 1997).  Indeed, plaintiff herself testified that the first

picture was seen by her at a shared printed and that the Captain who sent it to the printer, Robert Humes, came along almost immediately and took it out of plaintiff's hands. Plaintiff's Dep. at 106.  She also testified that she did <u>not</u> complain about the pornography to DOT's EEO.  Plaintiff's Dep. at 107-08.  Plaintiff obviously knew how to complain to EEO because she did so about the office at about the same time.  <u>Id.</u> at 103.  The failure to avail herself of the EEO procedures is fatal to her hostile work environment claim.

Second, there was just the one picture and one cartoon, and the latter was sent to her because she had requested that subordinates send her such materials so that she could have if for "safekeeping" and "evidence."  Plaintiff's Dep at 117.  Plaintiff cannot solicit such materials and then complain of hostile work environment when she receives them.

Third, one picture and one political cartoon of questionable taste, cannot constitute a work environment hostile to plaintiff due to her gender.  This is simply not severe enough or pervasive and cannot constitute a hostile work environment under Title VII.

Fourth, plaintiff complains about a comment allegedly made by Mr. Bones, when he first became Chief, PCU, in the Fall of 2002.  Mr. Bones allegedly commented to plaintiff that he did not know why Mssrs. Rosen and Susi did not get rid of plaintiff and that she must have their balls in her hands.  Plaintiff's Dep. at 94.  This comment cannot be thought to have a reference to anyone's gender, let alone plaintiff's.  <u>See</u> <u>Grady v. Affiliate Central</u>, 130 F.3d 553, 561 (2d Cir. 1997).  This appears to be nothing more than an expression meant to convey that the person has power over another rather than a gender specific comment.  At most, it is a reference to the gender of Mssrs. Rosen and Susi and not to plaintiff's.  <u>Renz v. Grey Advertising Co.</u>, 135 F.3d 217 (2d Cir. 1997) (comments not directed at plaintiff were only evidence of discrimination; insufficient to find discrimination);

see also Abdu-Brisson v. Delta Airlines, 239 F.3d 456, 468 (2d Cir. 2001) ("the stray remarks of a decision-maker, without more, cannot prove a claim of employment discrimination").  While vulgar, in its context this comment cannot be viewed objectively as disparaging towards any gender.  See Demoret v. Zegarelli, 451 F.3d 140, 149 (2d Cir. 2006)(plaintiff must objectively hostile and abusive environment) see also. Bowman v. Shawnee State University, 220 F.3d 456, 464 (6th Cir. 2000)("While [plaintiff] recites a litany of perceived slights and abuses, many of the alleged harassing acts cannot be considered in the hostile environment analysis because [plaintiff] has not shown that the alleged harassment was based upon his status as a male…").

In any event this single comment, the only gender specific comment alleged by plaintiff, cannot suffice to show a hostile work environment even when combined with the change in office space and the pornography incident, which happened a year later in the Fall of 2003.  See, e.g., Carter v. Cornell University, 976 F. Supp. 224, 232, aff'd, 159 F.3d 1345 (2d Cir. 1998)(6 comments over three years insufficient); Stembridge v. City of New York, 88 F. Supp. 2d 276, 286 (S.D.N.Y. 2000)(seven instances over three years insufficient); see also Quinn v. Green Tree Credit Crop., 159 F.3d 759, 768 (2d Cir. 1998); Kotcher v. Rosa & Sullivan Appliance Ctr., 957 F.2d 59, 62 (2d Cir. 1992)(to create an actionable hostile environment, the discriminatory incidents "must be repeated and continuous; isolated acts or occasional episodes will not merit relief.").

Perhaps most importantly, DOT did not, and does not, tolerate such conduct at all.  Plaintiff testified that she never complained to DOT's EEO about the picture or pornography.  Thus, this cannot suffice to establish a hostile work environment.  .  See Faragher v. City of Boca Raton, 524 U.S. at 789.  However, when there was an anonymous

complaint about pornography in PCU the DOT conducted a thorough investigation. The employees at fault, 12 of them including Mr. Bones, then Chief, PCU, were disciplined. Mr. Bones lost his job in PCU, was demoted for a year, lost $6-7,000 in salary, and was placed on probation. Susi Dep. at 28, which is annexed to the Schlesinger Decl. as Exhibit "C." Mr. Bones was not permitted to return to PCU thereafter but served in another part of DOT. Id. With respect to plaintiff's assigned office space, once plaintiff complained about the office, Mssrs. Rosen and Susi immediately inspected the office, found it adequate, but moved plaintiff to accommodate her. Thus, even if a hostile workplace could somehow be found to exist from this handful of incidents, the employer took prompt and effective remedial action. Thus, plaintiff's hostile work environment claim must be dismissed on summary judgment.

**D.      Plaintiff's Retaliation Claim Must Also Be Dismissed.**

Plaintiff's retaliation claim also fails. "To establish a prima facie case of retaliation, the plaintiff must prove: (1) participation in a protected activity that is known to the defendant, (2) an employment decision or action disadvantaging the plaintiff, and (3) a causal connection between the protected activity and the adverse decision." Richardson v. New York State Dep't of Correctional Serv., 180 F.3d 426, 443 (2d Cir. 1999). For an employment decision to be "disadvantageous," it must be likely to dissuade "a reasonable worker from making or supporting a charge of discrimination." Burlington Northern & Sante Fe Ry Co., ___ U.S. ___, 126 S. Ct. 2405, 2415 (2006).

Here, plaintiff alleges that she was given poor evaluations in retaliation for complaining. However, in this case, plaintiff received ratings of "Good" on her evaluations. Considering the extremely negative feedback from the trainees concerning the training they received in July, 2004, a "good" rating for that year would seem generous. See Memorandum, dated July 16, 2004, and attachments which are annexed to the Schlesinger

Decl. as Exhibit "G,"; see McLee v. Chrysler Corp., 109 F.3d 130, 135 (2d Cir. 1997); Osier v. Broome County, 47 F. Supp. 2d 311 (N.D.N.Y. 1999).  Plaintiff concedes that she did not apply for any other positions, even though interviews were offered, which belies her claim that she lost advancement opportunities because of the evaluations.  A poor evaluation might meet the Burlington Northern standard even though no real change in her employment occurred.  However, the complaints from her subordinates were real and reflected poor management skills.  The employer has a right both to the selection of which skills are important for a higher level position and also to its own view of whether plaintiff had the skills for the position.  See Thornley, 104 F.3d at 29.  There is therefore a nondiscriminatory reason for plaintiff's evaluations.

Moreover, plaintiff cannot show a causal connection between any protected activity and the alleged adverse actions taken against her.  She has not shown that her April 1, 2002, reassignment from Chief, PCU was in response to any EEO complaint.  Nor can the later alleged failure to reassign her to the Chief, PCU, be considered a surprise to anyone other than plaintiff.  Plaintiff was removed from the position because of her management of staff, who believed she targeted people for discipline, was divisive, and that she was rude and hostile when speaking to them.  This was exemplified in the letter of November, 2001.  Schlesinger Decl. Exhibit "B."  It is readily apparent from the reaction of staff when there were rumors of her return to the Chief, PCU position in 2004.  Id. Exhibit "F."  It is also apparent in the reaction of trainees in July, 2004.  Id., Exhibit "G."  Indeed, many of the problems as were the subject of the November 7, 2001, and February 4, 2004, letters from the union are reiterated in the anonymous reviews of plaintiff's training sessions to new officers in the PCU.  Compare Trainees responses, Schlesinger Decl. Exhibit "G,"

<u>with</u> union letters from November 7, 2001, and February 4, 2004, Exhibits "B," and "F." The consistent pattern here shows ample reason for the reassignment of plaintiff and the refusal to again place her in charge of the PCU.  Thus, the reassignment of Griffith to Chief, PCU, and Carlos Torres, to Deputy Director, PCU in 2004-06, are neither discriminatory nor retaliatory.

    Nor has she cited to any evidence that the transfer of her office space in October, 2002, from that of the Chief, PCU to the training room was retaliatory.  Plaintiff at that time had become Chief, Training, PCU and therefore the training room was not an unnatural office for her.  Also, at that time Domingo Bones had become Chief, PCU, and therefore it was entirely appropriate for Mr. Bones to receive the Chief, PCU office, which plaintiff then occupied.  Further, plaintiff had assigned PCU staff to that office herself. Finally, plaintiff was in that office for only as short time, at most 2-3 weeks.  When plaintiff complained about the office, it was inspected, found adequate but, to accommodate plaintiff, she was immediately moved to another office space.  Thus, assuming, <u>arguendo</u>, that this office transfer is adverse action under <u>Burlington Northern</u>, plaintiff cannot show that there is a causal connection between her assignment to this office and any protected activity.

    In addition, the need to move plaintiff's office in late 2002 is a necessary corollary to her reassignment from the Chief, PCU position and this is a legitimate nondiscriminatory reason for the change in offices.  Plaintiff cannot show that this reason for changing her office was false or that the real reason was retaliation.  Further, the later effects of alleged past discrimination (here, the reassignment from Chief, PCU) cannot suffice to state a discrimination or retaliation claim under Title VII.  <u>See</u>, <u>e.g.</u>, <u>Ledbetter v. Goodyear Tire & Rubber Co.</u>, __ U.S. ___, 127 S. Ct. 2162, 2172 (2007).  Thus, plaintiff cannot show

pretext and summary judgment should be granted with respect to the office space claim of discrimination or retaliation.

Plaintiff's litany of complaints also fail. Plaintiff contends, for example, that she was transferred from the DOT to the NYPD as an act of retaliation despite the fact that the PCU was functionally transferred as a whole. She claims that there was a list of people designated to remain at DOT. However, plaintiff also testified as follows:

> Q.    You heard about this list through a rumor; correct?
>
> A.    Yes.

Plaintiff's Dep. at 196. Obviously, such rampant speculation without foundation cannot take the place of admissible evidence and cannot prevent the entry of summary judgment.

## POINT III

## PLAINTIFF'S SECTION 1983 CLAIMS MUST BE DISMISSED.

### A.    The First Amendment Standard

"A public employee who makes a First Amendment claim of employment retaliation under § 1983 must show that: (1) his speech addressed a matter of public concern, (2) he suffered an adverse employment decision, and (3) a causal connection exists between his speech and that adverse employment decision, so that it can be said that the plaintiff's speech was a motivating factor in the adverse employment action." Cioffi v. Averill Park Central School District, 444 F.3d 158, 162 (2d Cir. 2006) (citing Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999)). Even if these factors are satisfied the government will not have violated the First Amendment if government reasonably believed that the speech had a potential to disrupt the government's operations. Waters v. Churchill, 511 U.S. 661 (1994).

This multi-factor test is based on the seminal case of <u>Pickering v. Board of Education</u>, in which the Supreme Court set forth the framework for deciding First Amendment retaliation cases such as the one at bar.  391 U.S. 563 (1968).  The problem, the <u>Pickering</u> court held, was to balance the interests of the employee and the "interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."  391 U.S. at 568.  Thirty-five years later the Second Circuit described the <u>Pickering</u> balancing test as follows:

> The <u>Pickering</u> test involves a two-step inquiry: first, a court must determine whether the speech . . . relates to a matter of public concern; and, second, if so, the balance between free speech concerns is weighed against efficient public service to ascertain to which the scale tips.

<u>Melzer v. N.Y.C. Bd. of Educ.</u>, 336 F.3d 185, 193 (2d Cir. 2003)(citation omitted); <u>Pappas v. Giuliani</u>, 290 F.3d 143 (2d Cir. 2002).

**B.      Public Concern And Protected Speech**

Not all speech is protected by the First Amendment simply because it may be of interest to some members of the public.  <u>See</u> <u>Ezekwo v. HHC</u>, 940 F.2d 775, 781 (2d Cir.), <u>cert. denied</u>, 502 U.S. 1013 (1991).

> when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision . . . .

<u>Connick v. Myers</u>, 461 U.S. 138, 147 (1983) (citation omitted).  Whether speech addresses a matter of public concern often depends on the content, form, and context of the speech.  <u>Id.</u> at 147-48.  In determining whether the speech is of public concern the Court must determine

"whether her conduct <u>taken as a whole</u>, was actually meant to address matters of public concern, or was simply a vehicle for furthering her private interests."  <u>Pappas</u>, 290 F.3d at 153 (McMahon, J., concurring)(citing <u>Connick</u>, 461 U.S. at 147-48).  While the motive of the speaker is not dispositive in determining whether the speech is protected, motive is certainly an important factor.  <u>See</u> <u>Reuland v. Hynes</u>, 460 F.3d 409, 417 (2d Cir. 2006).  Thus, in determining whether speech is on a matter of public concern "the court should focus on the motive of the speaker and attempt to determine whether the speech was calculated to redress personal grievances or whether it had a broader public purpose."  <u>Lewis v. Cowen</u>, 165 F.3d 154, 163-64 (2d Cir. 1999).

This point was reemphasized just last year in <u>Garcetti</u>, in which the Supreme Court held speech uttered pursuant to the employee's official duties is not protected speech. __ U.S. __, 126 S. Ct. 1951 (2006).  The employee is not acting in the role of private citizen and, therefore, the employee's speech is not protected by the First Amendment.  As the Supreme Court put it in <u>Garcetti</u>:

> [W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline.

126 S. Ct. at 1960.  The Second Circuit has applied <u>Garcetti</u> to the area of discrimination law, holding that:

> the District Court did not err in denying [plaintiff's] motion for summary judgment and granting defendants' motion for summary judgment.  [Plaintiff's] Equal Employment Opportunity ("EEO") complaints were not on a matter of public concern. <u>See</u>, <u>e.g.</u>, <u>Saulpaugh v. Monroe Cmty. Hosp.</u>, 4 F.3d 134, 143 (2d Cir. 1993) (plaintiff's speech not constitutionally

- 19 -

protected where it was "motivated by and dealt
with her individual employment situation").

DeFilippo v. N.Y. State Unified Court Sys., 223 Fed. Appx. 45, 45-46 (2d Cir. April 19,

2007).

Here, all of plaintiff's speech concerned her particular job.  On March 14,

2002, plaintiff transmitted to her supervisors a complaint from staff concerning Teamsters

Local 237, the union which represented officers and supervisors in PCU and which, some

PCU staff complained, had an apparent conflict of interest because of this dual

representation.  This is quintessential speech on the official business of the employer;

plaintiff, then Chief of PCU, is reporting a problem within PCU.  It is not protected speech

under the Second Circuit's decision in Saulpaugh, recently reaffirmed in the summary

decision in DeFilippo, and the Supreme Court's decision in Garcetti.  It should be noted that

this transmittal came a few months after the November 7, 2001, letter in which L. 237 had

vociferously complained about plaintiff's leadership of the PCU.  See November 7, 2001,

letter from L. 237 which is annexed to the Schlesinger Decl. as Exhibit "B."  Thus, plaintiff's

transmittal of that complaint cannot form the basis of any First Amendment claim.

Moreover, there is no causal connection between this alleged speech and the

alleged "adverse employment actions."[5]  Plaintiff's transmittal did not bring to the fore a new

problem but merely reiterated a long standing concern of DOT management.  See e-mail

from Victor Rosen to DOT administration, dated March 14, 2002, which is annexed to the

Schlesinger Decl. as Exhibit "H."   Far from engendering animus toward plaintiff, her

---

[5] As has been shown in Point II, above, there has been no adverse employment action taken
against plaintiff, other than being denied the higher positions of Deputy Director and Chief,
PCU.  See Bernheim v. Litt, 79 F.3d 318 (2d Cir. 1996)(Where the damage is petty there is
no First Amendment claim; Circuit refuses to "constitutionalize" employee grievance
process).

superiors were in sympathy with the concerns of some PCU staff concerning an apparent conflict of interest in L. 237's representation.  Mr. Rosen stated in response ot plaintiff's March 14th communication, that he "hope[d] that we can find a proper means of redress for these individuals."  Id.

In addition, the changing of plaintiff's office space happened in October, 2002, more than 6 months after the March 14th alleged speech, and most of the other events such as failure to reassign plaintiff to Chief, PCU, were a year or more after that.  See Clark County School Dist. v. Breeden, 532 U.S. 268, 273 (2001).  Thus, even assuming, arguendo, that the transmittal of the concern of some members of the staff was somehow protected speech, and plaintiff's protected speech at that, there is no evidence of casual connection here and the First Amendment claims must be dismissed.  It need only be added that the DOT and its managers had legitimate reasons for their actions, which have been shown in Point II, above.  Thus, all of the § 1983 claims must be dismissed.

## C.   Monell

A municipality cannot be held liable under § 1983 on a *respondeat superior* theory of liability but, rather a municipal policy, practice or custom must be shown to have caused the alleged constitutional injury.   Board Of The County Commissioners Of Bryan County v. Brown, 520 U.S. 397, 399 (1997)(citing Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 694 (1978)("Monell")).  Causation is also integral to any § 1983 claim and the causation standard for an Equal Protection Clause employment case is particularly high.  Taylor v. Brentwood Union Free School District, 143 F.3d 679 (2d Cir. 1998).  A plaintiff must show that the municipality deliberately chose a policy that became the moving force behind the constitutional injury.  See Bryan County, 520 U.S. at 504.  "rigorous standards of culpability and causation must be applied to ensure that the municipality is not

held liable solely for the actions of its employee." Id. at 505 (citations omitted).  To survive summary judgment on an Equal Protection Clause claim, plaintiff must present evidence that the actions taken by defendants were motivated by intentional discriminatory animus.  See Personnel Administrator v. Feeney, 442 U.S. 256, 279 (1979).

Here there is no showing of a Monell policy under § 1983.  First, as shown above, there is no First Amendment claim and thus, the case against the City should be dismissed.  See Los Angeles v. Heller, 475 U.S. 796 (1986).  Second, there is no showing of a municipal policy that led to the alleged First Amendment claim.  The mere fact that high level individuals were involved in the decision does not mean that the decision constitutes a municipal policy.  St. Louis v. Praprotnik, 485 U.S. 112 (1988); Davis v. City of New York, 1990 U.S. Dist. LEXIS 14006 *27-*41 (S.D.N.Y. 1990).  Third, as shown in Point II, above, there were legitimate reasons for the decision taken concerning plaintiff and this forms a defense in § 1983 claims as well as in Title VII.  Plaintiff cannot show that any protected characteristic or activity motivated anyone to take any action against her.  Rather, plaintiff's own actions, demeanor, and hostility caused the alleged adverse actions taken against plaintiff.  Thus, the § 1983 claim, whether it be a First Amendment or a discrimination claim, should be dismissed.

**D.    Individual Claims Must Be Dismissed - Personal Involvement**

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (citation and internal quotation marks omitted).  A plaintiff must show that the individual defendant was personally involved in the constitutional violation to avoid summary judgment.  See Thomas v. Ashcroft, 470 F.3d 491, 496-97 (2d Cir. 2006).  If the individual defendant is a supervisor then personal involvement

"may be shown may be shown by evidence that the defendant: (1) directly participated in the constitutional violation; (2) failed to remedy the violation after learning of it through a report or appeal; (3) created a custom or policy fostering the violation or allowed the custom or policy to continue after learning of it; (4) was grossly negligent in supervising subordinates who caused the violation; or (5) failed to act on information indicating that unconstitutional acts were occurring."  Id. at 497 (citations omitted).

In the instant case, plaintiff has sued Mssrs. Rosen and Susi.  Plaintiff has not shown that these two managers created a custom, policy, or practice or were grossly negligent in supervising their subordinates or were in any way personally involved in the alleged discrimination or retaliation.  Plaintiff has simply assumed that these individuals are responsible for all of her complaints concerning the job.  Typical was plaintiff's attribution of the problems concerning her office space to Mr. Rosen:

> Because nobody moves or scratches there without Mr. Rosen's approval.  Mr. Rosen is a micro manager and you do not do anything there without his authorization, period, end of story. You don't file charges, they do not go through anything but him for approval, you discuss them with him.  After you complete the charges they go to personnel then they go through the system. He micro manages and gives his approval on every single thing that is done in the Bureau of Parking whether you are a director of engineering or a chief of on street or off street operation, it doesn't matter.

Plaintiff's Dep. at 104, which is annexed to the Schlesinger Decl. as Exhibit "A."  This is precisely the kind of inadmissible speculation which the Second Circuit has rejected as a basis for denying summary judgment.  The Circuit has held that "conclusory allegations of discrimination are insufficient to satisfy the requirements of Rule 56(e)." Meiri v. Dacon, 759

F.2d 989, 998 (2d Cir. 1985); see Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997); see also Abdu-Brisson, 239 F.3d at 466.

**E.     Individual Claims Must Be Dismissed - Qualified Immunity**

To the extent that plaintiff is attempting to state some sort of First Amendment retaliation claim based on her March 14, 2002, forwarding to Mr. Rosen of the complaint by PCU staff of a conflict of interest in union representation, qualified immunity shields the two individual defendants.  Qualified immunity protects individual government officials from suit unless it would be clear to any reasonable official that the official's actions were violating the Constitution.  Wilson v. Layne, 526 U.S. 603 (2001).  The initial inquiry is whether a constitutional right has been violated.  Siegert v. Gilley, 500 U.S. 226 (1991).  If the Court finds that a constitutional right has been violated then the Court must determine whether the right in question was "clearly established," at the time that the incident occurred. A right is "clearly established if the contours of the right are so clear that a reasonable official would understand that what he or she is doing violates that right."  Wilson, 526 U.S. at 614-15 (quoting, Anderson v. Creighton, 483 U.S. 635, 640 (1987) (internal citations omitted)).  The relevant, dispositive inquiry is whether it would be clear to a reasonable officer that the conduct was unlawful in the situation he confronted.  Id.  Thus, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

In the instant case, the speech was not protected by the First Amendment.[6] Even assuming, arguendo, that it was protected speech, it was not, and is not today, clearly established that it constituted protected speech.  In light of the recent decision in Garcetti, a

---

[6] If the alleged retaliation would be actionable under Title VII then the § 1983 does not provide an additional cause of action.

reasonable government official would not have known that this alleged protected speech, the forwarding of complaints of staff members was protected speech.[7]   The First Amendment protection of this alleged speech cannot be said to be so objectively clear that only an "incompetent" or someone bent on violating the law would have thought their actions lawful. Therefore, qualified immunity must shield the individual defendants and all claims against them must be dismissed.

## CONCLUSION

WHEREFORE, defendants respectfully request that their motion for summary judgment be granted, that the complaint be dismissed in all respects, that the request for relief be denied in its entirety, that judgment be entered for defendants, and that defendants be granted costs, fees, and disbursements, together with such other and further relief as the Court deems just and proper.

Dated:         New York, New York
               September 28, 2007

                              MICHAEL A. CARDOZO
                              Corporation Counsel of the
                                City of New York
                              Attorney for Defendants
                              100 Church Street, Room 2-187
                              New York, N.Y. 10007-2601
                              (212) 788-0952


                         By:  **ECF**                /s/
                              _____
                                   Alan M. Schlesinger
                                   Assistant Corporation Counsel

---

[7] There   is  no  §  1983  claim  for  allegations  that  an  employer  has  engaged  in  retaliatory conduct remediable under Title VII.  Saulpaugh v. Monroe Community Hospital, 4 F.3d 134 (2d Cir. 1993), cert. denied, 510 U.S. 1164 (1994).